**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ECLIPSE IP LLC, | |
| Plaintiff, | |
| | **CASE NO. 2:15-CV-363** |
| v. | |
| PRO-SOURCE PERFORMANCE | **JURY TRIAL DEMANDED** |
| PRODUCTS, INC., | |
| Defendant. | |

**DEFENDANT PRO-SOURCE PERFORMANCE PRODUCTS, INC.'S**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF THE ISSUES ....................................................................................... 2

II. BACKGROUND ............................................................................................................. 2

III. LEGAL STANDARD ..................................................................................................... 5

    A.    This case should be disposed of at the pleading stage through Rule 12(b)(6). ............................................................................................................5

    B.    Claim construction is not necessary to conclude that a patent does not recite eligible subject matter. ........................................................7

    C.    The law of 35 U.S.C. § 101 ..............................................................................7

IV. ARGUMENT................................................................................................................... 9

    A.    The independent claims are not patent-eligible under 35 U.S.C. § 101. ...............................................................................................................10

        1.    The claims preempt the abstract ideas of ensuring trusted sources of information and enabling parties to communicate regarding tracked items. .....................................................................10

        2.    The claims do not contain meaningful limitations that would render them patent-eligible. ................................................................11

        3.    The claims are not directed to a machine or transformation............13

    B.    The dependent claims of the '239 Patent are not patent-eligible under 35 U.S.C. § 101. ..............................................................................................16

V. CONCLUSION .............................................................................................................. 19

-i-

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..............................................................................................4

*In re Bilski,*
   545 F.3d 943 (Fed. Cir. 2008) (en banc), *aff'd, Bilski v. Kappos,* 130 S. Ct.
   3218 (2010) .................................................................................5, 6, 7, 12

*Cardpool Inc. v. Plastic Jungle, Inc.,*
   No. C. 12-04182, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013)..............................................6

*Clear with Computers, LLC v. Altec Inds., Inc.,*
   No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015)..................................................5

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
   No. 6:12-cv-00951, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014)..........................6, 8, 11, 13

*Cogent Medicine, Inc. v. Elsevier, Inc.,*
   No. C-13-4479, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014) ...........................................5

*Cuvillier v. Sullivan,*
   503 F.3d 397 (5th Cir. 2007) ...............................................................................4, 5

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.,*
   No. 2012-1673, 558 F. App'x 988 (Fed. Cir. Feb. 26, 2014) .....................................6, 8, 14

*Cybersource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) .........................................................................7, 15

*Dealertrack, Inc. v. Huber,*
   951 F.3d 1315 (Fed. Cir. 2012) ...........................................................................5, 13

*Diamond v. Chakrabarty,*
   447 U.S. 303 (1980).............................................................................................6

*Diamond v. Diehr,*
   450 U.S. 175 (1981)..............................................................................................7

*Eclipse IP, LLC v. McKinley Equip. Corp.,*
   No. 8:14-cv-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)................................... *passim*

*Fort Props., Inc. v. Am. Master Lease LLC,*
    671 F.3d 1317 (Fed. Cir. 2012) ........................................................7

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings,*
    No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) ......................5

*Lovelace v. Software Spectrum,*
    78 F.3d 1015 (5th Cir. 1996) ........................................................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    132 S. Ct. 1289 (2012) ..........................................................7, 11

*OIP Techs., Inc. v. Amazon.com, Inc.,*
    No. C-12-1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) ......................6, 13

*Open Text S.A. v. Alfresco Software Ltd.,*
    No. 13-cv-04843, 2014 WL 4684429 (C.D. Cal. Sept. 19, 2014).......................5

*Parker v. Flook,*
    437 U.S. 584 (1978) ...............................................................7

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
    601 F .3d 1319, 1333 (Fed. Cir. 2010) ..............................................14

*Tuxis Techs., LLC v. Amazon.com, Inc.,*
    No. 13-1771, 2014 WL 4382446 (D. Del. Sept. 3, 2014)................................5, 6

*UbiComm, LLC v. Zappos IP, Inc.,*
    No. 13-1029, 2013 WL 6019203 (D. Del. Nov. 13, 2013)................................6

*Ultramercial, Inc. v. Hulu, LLC,*
    No. 2010-1951, 2014 WL 5904902 (Fed. Cir. Nov. 14, 2014)............................5

**Statutes**

35 U.S.C. § 101 ................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12 .................................................4, 5, 6

The claims at issue in this case are ineligible under 35 U.S.C. § 101 because they are materially indistinguishable from claims invalidated by the United States District Court for the Central District of California regarding patents in the same family (*i.e.*, with the same specification and claiming materially indistinguishable subject matter) as the patent asserted in this case. U.S. Patent No. 7,876,239 (the "'239 Patent") claims notification systems and methods for verifying that a communication comes from a trusted source. Just like the claims in plaintiff Eclipse IP, LLC's patents that were invalidated in *Eclipse IP, LLC v. McKinley Equip. Corp.*, No. 8:14-cv-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) as constituting nothing more than abstract ideas—simply claiming various methods of asking individuals to perform tasks or tracking mobile fleets—the claims of the '239 Patent also attempt to claim abstract ideas and are therefore invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

Eclipse's purported factual allegations in its First Amended Complaint also fail to confer patentability on the claims of the '239 Patent. Eclipse attempts to explain why the claims are directed to patentable subject matter regarding computer-based notification systems. But, instead, these allegations (even if true) demonstrate that no meaningful aspects of the alleged invention sufficiently limiting the abstract idea made their way into the patent's claims. Therefore, the patent remains invalid, and Eclipse's First Amended Complaint fails to make a claim upon which relief can be granted.

Resolving these issues does not require discovery or formal claim construction. Plaintiff's factual allegations can be presumed as true, yet do not help it avoid dismissal. Therefore, to avoid waste of judicial and party resources unnecessarily litigating an

invalid patent, Defendant Pro-Source Performance Products, Inc. respectfully requests that the Court dismiss Eclipse's complaint for failure to state a claim.

## I.   STATEMENT OF THE ISSUES

Patent claims that purport to patent an abstract idea are ineligible for patentability under 35 U.S.C. § 101. The claims of the '239 Patent purport to patent the abstract idea of communicating regarding a tracked item, including verifying the source of the communication. Should the Court therefore dismiss Eclipse's complaint for failure to state a claim?

## II.   BACKGROUND

On September 4, 2014, the United States District Court for the Central District of California issued an order invalidating the asserted claims of three of Eclipse's patents: U.S. Patent Nos. 7,064,681 (the "'681 Patent"), 7,113,110 (the "'110 Patent"), and 7,119,716 (the "'716 Patent"). *McKinley*, 2014 WL 4407592 at *1. The court found that all the asserted claims were directed to patent-ineligible subject matter. *Id.* at *12. In particular, the court found the '681 Patent was "directed to the abstract idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else." *Id.* at *7. The court held the '716 Patent was "directed to the abstract idea of asking someone to do a task, getting an affirmative response, and then waiting until the task is done, 'while adding the words 'apply it with a computer.''" *Id.* at *9. The court also held the '110 Patent was directed "to the abstract idea of asking people, based on their location, to go places." *Id.* at *11. The court therefore dismissed Eclipse's claims, and Eclipse is currently appealing that decision.

On March 13, 2015, Eclipse filed this lawsuit against Pro-Source, alleging infringement of the '239 Patent, a patent that is closely related to the patents invalided by the California district court and results from essentially the same specification. (Dkt. No. 1 at 2-4.) The '239 Patent is entitled "Secure Notification Messaging Systems and Methods Using Authentication Indicia" and is generally directed to "[s]ystems and methods . . . for notification or messaging systems that give confidence to the notification-receiving party that a notification concerning the travel status of a mobile thing is from a proper authorized source." '239 Patent at Abstract. In its Complaint, Eclipse accuses Pro-Source of infringement because it asserts that Pro-Source uses computer-based notification systems and methods to communicate with customers who place orders with Pro-Source. (Dkt. No. 1 at 2-3.)

The '239 Patent is materially indistinguishable from the patents invalidated by the California district court. The '239 Patent issued on January 25, 2011, with five independent claims and 56 dependent claims, all of which are directed to the idea of enabling an intended recipient of a delivery to verify whether a message comes from a trusted source. The applicant described the invention of the '239 Patent as simply "systems and methods for notification or messaging systems that give confidence to the notification-receiving party that a notification concerning the travel status of a mobile thing is from a proper authorized source." '239 Patent at 3:27-31. Independent claim 1 is representative of the claims in the patent:

A method for a computer-based notification system, comprising:

enabling a party to provide or select authentication information for use in connection with a notification communication session involving a delivery or pickup task associated with a mobile thing;

storing the authentication information;

monitoring travel data associated with a mobile thing;

initiating the notification communication session with a personal communications device associated with the party;

providing the stored authentication information to the personal communications device that indicates to the party that the notification communication session was initiated by an authorized source.

*Id.* at Claim 1. The claims of the '239 Patent essentially cover (1) allowing a party to provide authentication information (*e.g.*, a password, passcode, or identification information such as a mailing address or email address); (2) storing that information; (3) tracking a mobile item to be delivered or picked up; (4) contacting the party regarding the item; and (5) providing the party with the stored authentication information so that the party knows the contacting party is authorized. *Id.* It thus impermissibly claims nothing more than the idea of enabling an intended recipient of a delivery to verify whether a message comes from a trusted source. *See id.* Eclipse broadly construes "authentication information" to include information regarding the particular item ordered by a customer, such that a vendor sending an order confirmation email or shipping notification email that references the item purchased by the customer constitutes providing the customer with the identification information, a practice that has been in place since long before the Internet.

Eclipse filed a First Amended Complaint on May 28, 2015, in response to Pro-Source's first motion to dismiss under § 101. (*See* Dkt. No. 14.) This First Amended Complaint does not solve the issues fatal to the patent-in-suit. Even if the underlying

factual allegations were presumed true (disregarding Eclipse's bare attorney arguments concerning the law), these facts fail the § 101 tests. Therefore, the Court should grant this motion and dismiss Eclipse's claims.

## III.   LEGAL STANDARD

### A.   This case should be disposed of at the pleading stage through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions."). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted). Thus, "resolving subject matter eligibility at the outset provides a bulwark against vexatious

infringement suits." *Ultramercial, Inc. v. Hulu, LLC*, No. 2010-1951, 2014 WL 5904902, at *8 (Fed. Cir. Nov. 14, 2014) (Mayer, J., concurring).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (en banc), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (2010). Patent eligibility is evaluated from the perspective of the claims. *Dealertrack, Inc. v. Huber*, 951 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). To be actionable, a patent's claims must be drawn to patent-eligible subject matter under § 101. *Bilski*, 545 F.3d at 950. Accordingly, the § 101 inquiry is properly raised on a motion to dismiss under Rule 12(b)(6). *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, No. 2010-1951, 2014 WL 5904902, at *2, *6 (Fed. Cir. Nov. 14, 2014) (affirming grant of "pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims").[1]

---

[1] *See also Clear with Computers, LLC v. Altec Inds., Inc.*, No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) (granting Rule 12(b)(6) motion); *Cogent Medicine, Inc. v. Elsevier, Inc.*, No. C-13-4479, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014) (same); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843, 2014 WL 4684429 (C.D. Cal. Sept. 19, 2014) (same); *Eclipse IP LLC v. McKinley Equipment Corp.*, No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771, 2014 WL 4382446 (D. Del. Sept. 3, 2014) (same); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) (same); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029, 2013 WL 6019203, at *6 (D. Del. Nov. 13, 2013) (same); *Cardpool Inc. v. Plastic Jungle, Inc.*, No. C. 12-04182, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (same); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233, 2012 WL 3985118, at *20 (N.D. Cal. Sept. 11, 2012) (same); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-00951-LED, 2014 WL 923280, at *3-4, *6-7 (E.D. Tex. Jan. 21, 2014) (Davis, J.) (granting Rule 12(c) motion).

**B.     Claim construction is not necessary to conclude that a patent does not recite eligible subject matter.**

Claim construction is not required to conduct a § 101 analysis. *See Dick's Sporting Goods,* 2014 WL 923280, at *3-4; *see also Alice*, 134 S. Ct. 2347 (finding subject matter ineligible without performing claim construction); *Bilski*, 130 S. Ct. at 3231 (same); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, No. 2012-1673, 558 F. App'x 988, 991 n.1 (Fed. Cir. Feb. 26, 2014) (non-precedential) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."); *Bancorp*, 687 F.3d at 1273 ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

**C.     The law of 35 U.S.C. § 101**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. In addition, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over such ideas would preempt their use in all fields. *See Bilski*, 130 S. Ct. at 3231. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 3255 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps: First, the court determines "whether the claims at issue are directed

to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains such an abstract idea, the court evaluates whether there is "an 'inventive concept' — *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 130 S. Ct. at 3230-31; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

A process may be patent-eligible if it is "'tied to a particular machine or apparatus' or 'transforms a particular article into a different state or thing.'" *Cyberfone*, 558 F. App'x

at 992 (citations omitted); *see also Alice*, 134 S. Ct. at 2358. Simply adding a machine or transformation to a method claim, such as a computer, does not move the invention into the realm of the patentable; the claimed machine or transformation must impose **meaningful** limits on the claim's scope. *Alice*, 134 S. Ct. at 2358; s*ee also Dick's Sporting Goods,* 2014 WL 923280, at *4 (citing *CyberSource*, 654 F.3d at 1375–76, and *Dealertrack,* 951 F.3d at 1333).

## IV.    ARGUMENT

The claims of the '239 Patent are invalid as claiming patent-ineligible subject matter, as they are materially indistinguishable from the claims correctly invalidated by the California district court in *McKinley*. 2014 WL 4407592 at *12. Specifically, in *McKinley*, the United States District Court for the Central District of California found the '681 Patent was "directed to the abstract idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else." *Id.* at *7. The court held the '716 Patent was "directed to the abstract idea of asking someone to do a task, getting an affirmative response, and then waiting until the task is done, 'while adding the words 'apply it with a computer.''" *Id.* at *9. The court also held the '110 Patent was directed "to the abstract idea of asking people, based on their location, to go places." *Id.* at *11. Here the '239 Patent covers similarly abstract ideas, adding only the purported limitations relating to tracking "a mobile thing." These limitations, however, do not sufficiently distinguish the '239 Patent from the patents invalidated in *McKinley* for them to be patent eligible. Therefore, the '239 Patent should be held invalid as claiming ineligible subject matter.

## A.     The independent claims are not patent-eligible under 35 U.S.C. § 101.

The independent claims of the '239 Patent are invalid under § 101 for three reasons. First, the claims are directed to abstract ideas—ensuring trusted sources of information and enabling parties to communicate regarding a tracked item—and abstract ideas are not eligible for patent protection. Second, the claims are broadly generic and do not contain meaningful limitations that restrict the claims to non-routine and specific applications of the abstract idea. Finally, the claims fail the machine-or-transformation test.

### 1.     The claims preempt the abstract ideas of ensuring trusted sources of information and enabling parties to communicate regarding tracked items.

The claims embody methods of communication regarding tracked items—abstract ideas ineligible for patent protection. This much is clear for the '239 Patent when viewing the limitations of its Claim 1 alongside a conventional analogy in the context of pizza delivery:

| '239 Patent Claim 1 | |
| --- | --- |
| **Claim Limitations** | **Conventional Analogy "Delivering a Pizza"** |
| "enabling a party to provide or select authentication information for use in connection with a notification communication session involving a delivery or pickup task associated with a mobile thing" | providing order information (*e.g.*, an order number) for use when discussing the status of a pizza to be delivered |
| "storing the authentication information" | storing the order information |
| "monitoring travel data associated with a mobile thing" | tracking the pizza |
| "initiating the notification communication session with a personal | calling the person who ordered the pizza |

| | |
|---|---|
| communications device associated with the party" | |
| "providing the stored authentication information to the personal communications device that indicates to the party that the notification communication session was initiated by an authorized source" | providing the order information to the person who ordered the pizza |

The claims thus amount to nothing more than methods for parties to discuss the status of a tracked item, including authenticating the source of the communication. The remaining independent claims cover only the systems or apparatuses for performing these methods. The claimed processes are therefore just as undeserving of protection as the claims found patent-ineligible in *McKinley*, which involved general methods for performing certain tasks or for asking individuals to perform them. Here, the '239 Patent similarly claims general methods for communicating regarding the status of tracked items, so it is also invalid.

Because the independent claims encompass abstract ideas for communicating about tracked items using just about any means imaginable, the claims are not patent-eligible.

### 2. The claims do not contain meaningful limitations that would render them patent-eligible.

The independent claims do not recite meaningful limitations that would render them patent-eligible. As discussed above, some of the claimed systems and methods include nothing more than well-known, generic computer components. The inclusion of these computer components does not suffice to survive a § 101 challenge, as the mere

automation and efficiency permitted by performing the abstract ideas on a generic computer does not bring the claims into the realm of eligibility. *Alice*, 134 S. Ct. at 2358; s*ee also Dick's Sporting Goods,* 2014 WL 923280, at *4; *Enfish*, 2014 WL 5661456, at *11-12. The '239 Patent claims merely the task of communicating regarding a tracked item, adding some "apply it" language: namely, the use of a generic computer system to perform the claimed processes.

A claim is not rendered patent-eligible by reciting an abstract idea and adding limitations that merely reflect routine, conventional activity of those who work in the field. *See Mayo*, 132 S. Ct. at 1294. "Something more" is required. *Alice*, 134 S. Ct. at 2354. And even though several independent claims explicitly mention "computer-based" systems, their mention does not alter the analysis because they do not add meaningful limitations to the claim. *See Accenture*, 728 F.3d at 1344-45. Thus, when "insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional features remain in the claims." *Id.*, 728 F.3d at 1345 (quoting *Bancorp*, 687 F.3d at 1279 (holding claims patent-ineligible even when the specification "contains very detailed software implementation guidelines" because "the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer")).

Here, the '239 Patent notes that some methods for performing the claimed processes are "computer-based." Specifically, independent claims 1, 16, and 31 are directed to "computer-based notification system[s]," while claims 39 and 54 are directed to "computer system[s]" that include "a memory" and "a processor." None of these

limitations amounts to anything more than a general purpose computer programmed to perform the claimed abstract ideas. These limitations do not suffice to confer patent eligibility on the '239 Patent.

### 3. The claims are not directed to a machine or transformation.

Courts sometimes look to the machine-or-transformation test as "an investigative tool" to assess patent eligibility. *Bilski*, 130 S. Ct. at 3227. Under this test, a process is patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id*. at 3225-26 (internal quotations and citations omitted). Although the Supreme Court has held that it is not the sole test for determining the patent-eligibility of process claims, this test still remains a "useful and important clue." *Id*. at 3227. The independent claims of the '239 Patent fail both prongs of the MOT test.

First, the claims recite no particular machine or apparatus at all. The '239 Patent refers to "computer-based" systems, "a processor," and "a memory." But these generic terms amount to nothing more than general purpose computers, and a claim does not satisfy the machine prong if the claim as a whole reveals that it only calls for a general-purpose computer to perform the abstract idea. *See Dick's Sporting Goods*, 2014 WL 923280, at *6 (citing *Bancorp*, 687 F.3d at 1273, 1278 (affirming district court's ruling that a general-purpose computer does not satisfy machine prong of MOT test)); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *13 (N.D. Cal. Sept. 11, 2012) ("[M]erely identifying general 'machine elements' does not satisfy the MOT test; were that so, virtually any use of devices beyond the human body for a claimed method would satisfy

the test."). Here, nothing in the independent claims recites a specially designed or specially programmed computer. In this regard, the claims do not "specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent." *Dealertrack*, 951 F.3d at 1333. Rather, the '239 Patent describes (and depicts) a generic computer with generic computer components. *See, e.g.*, '239 Patent at Fig. 2 (depicting a generic interface connected to generic components, including "input device," "display," "disk," "printer," "sensor," and "processing element").

In fact, the court in *McKinley* specifically addressed whether the claims in Eclipse's other patents were tied to any particular machines or apparatus and found that they decidedly were not. 2014 WL 4407592 at *6-7. In particular, Eclipse argued that the "personal communications device" present in all the claims, including those in the '239 Patent, was a particular machine or apparatus, but the court disagreed, stating, "The specification teaches in one place that a personal communications device is a broad category that includes telephones, pagers, computers, and personal data assistants." *Id.* at *6. The court also pointed out that "in another [place], the specification is even more expressly sweeping":

> Nonlimiting examples of PCDs **75** are as follows: a personal computer (PC) capable of displaying the notification through e-mail or some other communications software, a television, a wireless (e.g., cellular, satellite, etc.) or non-wireless telephone, a pager, a personal data assistant, a navigation system in a motor vehicle, a radio receiver or transceiver, or any other device capable of notifying the user with some type of user perceptible emission.

*Id.* at *7 (quoting the specification of the '239 Patent at 18:46-53). Just like Eclipse's patents in *McKinley*, the '239 Patent has no tie to any particular machine or apparatus, as it shares

the same specification and thus has the same issues identified by the court in *McKinley*. *See id.*

In addition, the computer components in the claims "add[] nothing of significance to the claimed abstract idea." *Cyberfone*, 558 F. App'x at 993; *see also Alice*, 134 S. Ct. at 2358. In its First Amended Complaint, Eclipse claims the '239 Patent's inventions "<u>must</u> be performed by a computer-based notification system." (Dkt. No. 16 at 3.) But using a computer to merely perform an abstract idea, such as communicating regarding tracked items, does not make that idea patent-eligible under § 101. *Alice*, 134 S. Ct. at 2358; *see also SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F .3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a ***significant part*** in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, *i.e.*, through the utilization of a computer for performing calculations.") (emphasis added). Indeed, the recited abstract ideas can just as easily be performed by humans, as explained above in the context of pizza delivery. Therefore, the claims fail the machine prong of the MOT test.

Second, the claims do not recite any requisite transformation: the inventions direct merely the potential storage and exchange of information. "[M]ere manipulation or reorganization of data . . . does not satisfy the transformation prong." *Cybersource*, 654 F.3d at 1375; *see also Bancorp*, 687 F.3d at 1374. Here, the claims cover communication regarding tracked items, in some cases aided by a general purpose computer. The management of the data described by the claims does not require any novel change to the

content of the information and thus is not transformative—the claimed systems merely receive, store, and display information, as a person would select and store a password or order information. In other words, the result of using the claimed systems is nothing more than the sum of their parts and does not entail any original manipulation of the information.

**B.     The dependent claims of the '239 Patent are not patent-eligible under 35 U.S.C. § 101.**

The dependent claims do not recite patent-eligible subject matter for the same reasons discussed above for the independent claims. These dependent claims do nothing more than explain some relatively narrower possibilities of what the overly broad independent claims could cover. Just like the independent claims, their abstractness can be highlighted by conventional analogies in the context of pizza delivery:

| '239 Patent | |
|---|---|
| **Dependent Claim** | **Conventional Analogy "Delivering a Pizza"** |
| 2. The method of claim 1, further comprising the step of enabling the party to contact the system with the personal communications device or another communications device and define the authentication information. | calling the store or the delivery person to provide the pizza order information (*e.g.*, an order number) |
| 3. The method of claim 1, wherein the engaging step is performed when the mobile thing is a predetermined proximity with respect to a stop location, another predetermined location, or a geographic region. | initiating the call with the person who ordered the pizza when the delivery person is close to the delivery location |
| 4. The method of claim 1, wherein the steps are performed with a single computer system, a plurality of computer systems that are communicatively | performing the steps using a single general purpose computer, multiple general purpose computers, or a general purpose, distributed computer system |

| | |
|---|---|
| coupled, or a computer system having a distributed architecture. | |
| 5. The method of claim 1, further comprising the step of enabling the party to select a link to communicate over the Internet to verify the authenticity of the notification communication session and/or the authentication information. | providing the order information via a generic link over the Internet |
| 6. The method of claim 1, further comprising the step of enabling the party to verify whether an arriving mobile thing is the mobile thing that is authorized for the delivery or pickup task by:<br>　　　receiving an image from the personal communications device;<br>　　　comparing the image with a stored image; and<br>communicating a message back to the personal communications device, the message indicating a match or mismatch. | providing the delivery person with a picture of the pizza to be picked up or delivered, and enabling the delivery person to confirm whether the pizza matches the picture |
| 7. The method of claim 1, further comprising the step of enabling the party to verify whether an arriving mobile thing is the mobile thing that is authorized for the delivery or pickup task by:<br>　　　receiving a code from the personal communications device;<br>　　　comparing the code with a stored code; and<br>communicating a message back to the personal communications device, the message indicating a match or mismatch. | same as Claim 6 but using a code rather than a picture |
| 8. The method of claim 1, wherein the providing step is performed before, during, or after the initiating step. | providing the order information before, during, or after beginning the conversation with the person who ordered the pizza |
| 9. The method of claim 1, wherein the steps are performed by computer software residing on a non-transitory computer readable medium or media. | performing the steps using generic computer software residing on generic computer media |

| | |
|---|---|
| 10. The method of claim 1, wherein authentication information comprises a telephone number and wherein the telephone number corresponds to a communications device situated on the mobile thing. | using the customer's telephone number as the order information |
| 11. The method of claim 1, wherein authentication information comprises a telephone number and wherein the telephone number corresponds to a verification entity. | same as Claim 10 |
| 12. The method of claim 1, wherein the authentication information is an image or video of the mobile thing, a person or thing in the mobile thing, or something outside of the mobile thing. | using an image or video as the order information, where the image or video is of *absolutely anything* |
| 13. The method of claim 1, further comprising the step of receiving a response from the personal communications device to cancel, reschedule, or modify the delivery or pickup task. | enabling the person who ordered the pizza to cancel, reschedule, or modify the delivery of the pizza |
| 14. The method of claim 1, further comprising the step of enabling the party to provide or select a communication method associated with the notification communication session. | allowing the person ordering the pizza to select how they would like to be communicated with (*e.g.*, phone call, text message, e-mail) |
| 15. The method of claim 14, wherein the communication method is a telephone, a text, or an email communication. | communicating via phone, text, or e-mail |
| Remaining Dependent Claims | The remaining dependent claims correspond to the claims above but in the context of a "computer-based system" or a "computer system" |

These purported limitations do not provide any meaningful limits on the claims.

Spelling out specific details of the particulars of the communications provides no

inventive concept and does nothing to limit the overbreadth of the claims or their

dangerously preemptive nature. Thus these claims are still an improper attempt to patent

the fundamental concept of communicating regarding a tracked item without further contribution to the existing body of scientific or technological knowledge.

## V.    CONCLUSION

Because the '239 Patent's claims do not embrace patentable subject matter under § 101, Pro-Source respectfully requests that the Court dismiss this case with prejudice for failure to state a claim upon which relief can be granted. The only plausible reading of the claims of the patent-in-suit points to patent ineligibility, and nothing in Eclipse's First Amended Complaint changes that fact. Moreover, these claims are materially indistinguishable from the claims invalidated by the California district court in *McKinley*—they therefore deserve the same treatment here.

Dated: June 11, 2015                           Respectfully submitted,

                                  By:  */s/ Neil J. McNabnay*
                                      Neil J. McNabnay
                                      njm@fr.com
                                      Texas Bar No. 24002583
                                      P. Weston Musselman, Jr.
                                      pwm@fr.com
                                      Texas Bar No. 14749600
                                      Ricardo J. Bonilla
                                      rjb@fr.com
                                      Texas Bar No. 24082704

                                      FISH & RICHARDSON P.C.
                                      1717 Main Street, Suite 5000
                                      Dallas, TX 75201
                                      (214) 747-5070 (Telephone)
                                      (214) 747-2091 (Facsimile)

                                      **COUNSEL FOR DEFENDANT PRO-SOURCE PERFORMANCE PRODUCTS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on June 11, 2015, per Local Rule CV-5.2(a).

*/s/Ricardo J. Bonilla*

Ricardo J. Bonilla
